GERMAN INSURANCE COMPANY OF FREEPORT V. AMBROSE EDDY,

QUEEN INSURANCE COMPANY OF LIVERPOOL V. AMBROSE EDDY,

AND

GERMAN FIRE INSURANCE COMPANY OF PEORIA V. AMBROSE EDDY.

FILED MARCH 29, 1893.   NOS. 5014, 5015, 5016.

1. **Fire Insurance: VALUED POLICY ACT: PROVISION OF POLICY FOR APPOINTMENT OF ARBITRATORS.** Under the valued policy act of 1889, stipulations in a policy of insurance in conflict with any of the provisions of that act are inoperative, and

German Ins. Co. v. Eddy.

this applies to a provision in case of loss for the appointment of arbitrators. If the property is "totally destroyed" there is nothing to arbitrate.

2. ——: ——: Definition of "Totally Destroyed." Where all the combustible material in a building is destroyed by fire, although portions of the brick walls are left standing, but are so injured by the fire that they must be torn down, for the purpose of insurance the property is totally destroyed; but if the person insured should use the brick, or other material not destroyed, to rebuild, the company would be entitled to the value of such brick or material.

3. ——: ——: Instructions. Under the issues made by the pleadings the principal question was whether or not the property had been "totally destroyed," and this question was fairly submitted to the jury and the verdict is supported by the evidence.

Error from the district court of Lancaster county. Tried below before Tibbets, J.

*Lawrence Heiskell, J. R. Wash, Adams & Scott, I. W. Lansing,* and *Charles Offutt,* for plaintiffs in error.

*Abbott, Selleck & Lane, contra.*

Maxwell, Ch. J.

The above cases were tried together in the court below and a verdict rendered in favor of the defendant in error against the German Fire Insurance Company of Peoria for $1,824.46, against the Queen Insurance Company for $1,037.23, and German Insurance Company of Freeport for $912.22, all of said verdicts with interest from date of loss. The petition in each case alleges a total loss. The answers admitted the execution of the policies and the liability of the companies thereon, but alleged in avoidance that the policies provided that "in the event of disagreement as to the amount of loss the same shall be ascertained by two competent and disinterested appraisers, the assured and this company each selecting one and the

two so chosen shall first select a competent and disinterested umpire; and the award in writing of any two shall determine the amount of such loss." And the said policies each further provided that "No suit or action on this policy shall be sustainable in any court of law or equity until after full compliance by the assured with all the foregoing requirements." That there was "disagreement as to the amount of loss" and a demand by the insurance companies in due time that the question as to the amount of loss be submitted to arbitrators; that the demand was acceded to on July 3; 1890, and an arbitrator selected by each party on that day, and that therefore the actions were prematurely brought, they having been instituted while the arbitrators were acting and before they made an award; and that on September 12, 1890, two of the arbitrators made an award fixing the amount of the loss at $1,500 and no more.

The reply is as follows : " That he denies each and every allegation in said answer contained except as hereinafter specifically admitted. He admits that on the 3d day of July, 1890, there was an agreement by and between the parties hereto that the amount of the loss sustained by the plaintiff in the said fire should be submitted to arbitration as provided in the policy herein sued on ; that the plaintiff chose the said Royer and the defendant chose the said Harte to act in the said arbitration.

" Plaintiff further alleges that from that time he and the one he so chose, the said Royer, used their best efforts to have the said appraisal and arbitration made as provided in the said policy, but alleges that they were not able to get the said Harte to act with them, and alleges that the said Harte neglected and refused to act in said arbitration for more than the space of thirty days thereafter, although often requested so to do. That by reason of the refusal of the said Harte to act in said arbitration and the failure of the said Harte and the said Royer to make any appraisal of the said loss in said fire for more than the space of

thirty days the said loss was never arbitrated and deter-
mined under the said policy and in accordance with pro-
visions therein contained.    And that after having waited
for more than thirty days after the said Harte and Royer
had been chosen as herein set forth, and they having failed
in any way to act upon said loss or to set a time when they
would act thereon, plaintiff commenced this suit.    That
after the suit herein was begun the said defendant came to
the plaintiff and requested that the whole of the matters
in dispute involved in said loss and in the suit might be
submitted to the said Harte and the said Royer and to one
to be selected by them who should act in case of their dis-
agreement ; that at that time, to-wit, on the 21st day of
August, 1890, it was agreed by and between the parties
herein that said arbitration should take place on that day,
to-wit, on the 21st day of August, 1890; that in pursuance
of the said agreement, and not under the stipulations of the
policy, the said Harte and the said Royer agreed upon the
said Gray to act with them in the said arbitration ; that after
the said Gray had been so chosen, then the said Harte refused
to act with the said Royer and appraise the said loss in ac-
cordance with the said agreement, and the said Harte neg-
lected, failed, and refused to in any way go on with the said
appraisal and arbitration, and said Harte never did act or
try to act with said Royer under said agreement; that
afterwards he learned, and now alleges the fact to be, that
the said Harte was not a disinterested party, but that he
was in the employment of the defendant, and was, and is
prejudiced in its favor and against this plaintiff, and was
not a proper person to choose for an arbitrator under the
said policy, whereby and because of the failure of the said
Harte, Royer, and Gray to act in accordance with the
terms of the said agreement under which they were chosen,
and because plaintiff had learned of the prejudice of the
said Harte as herein alleged, the said last mentioned agree-
ment became null and void, and the plaintiff thereafter

notified the defendant that he withdrew from all further attempts at an arbitration of the said loss, and that he should proceed at once to clear away the rubbish and ruins of the said fire and to rebuild his house; that it was long after the said notice to the defendant, and after he had proceeded and cleared away the ruins from the said fire, that the said Harte and the said Gray made their pretended appraisal and award of the loss incurred by the said fire, and that when the said Harte and the said Gray made their pretended award there was no property there for them to view; that said loss has never been arbitrated or in any manner settled either under and by virtue of the terms of the said policy or by virtue of any agreement by and between the parties herein."

1. The first error relied upon is that the verdict is not sustained by sufficient evidence. The ground upon which this claim is made is that the proof fails to show a total loss of the property. In 1889 an act was passed as follows (sec. 43, ch. 43, Comp. Stats.): "Whenever any policy of insurance shall be written to insure any real property in this state against loss by fire, tornado, or lightning, and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages.

"Sec. 44. This act shall apply to all policies of insurance hereafter made or written upon real property in this state, and also to the renewal which shall hereafter be made of all policies heretofore written in this state, and the contracts made by such policies and renewals shall be construed to be contracts made under the laws of this state."

What is the meaning of the words "wholly destroyed" when applied to a building? If the building was constructed of brick or other non-combustible material fire

33

could not destroy that. Therefore the brick or other material not destroyed would have some value which the party retaining should pay for. From the nature of the case, therefore, the words referred to do not mean the *debris* from a building destroyed. This may have some value, and if so, the insurance company, if it pays the loss, is entitled to compensation for. The words when applied to a building mean totally destroyed as a building; that is, that the walls, although standing, are unsafe to use for the purpose of rebuilding and must be torn down and a new building erected throughout. (*Seyk v. Millers Nat. Ins. Co.*, 41 N. W. Rep. [Wis.], 443.) In the case cited it is said: "The evidence is that all the combustible material in the structures was destroyed, and although portions of the brick walls were left standing, yet they were useless as walls, and many, perhaps most, of the bricks therein were spoiled by the heat. It cannot be doubted that the identity and specific character of the insured buildings were destroyed by the fire, although there was not an absolute extinction of all the parts thereof. This was an entire destruction of the buildings, within the meaning of the statute. (1 Wood, Ins., sec. 107.)" There is abundant proof in the record that such was the situation of the building in the case at bar after the fire.

2. Where there is a total loss the provision for arbitration—except it may be to ascertain the value of the *debris*—does not apply. The provisions of the statute override any stipulations in the policy to that effect, as an insurance company can only do business in the state on the conditions provided by law. If the property was totally destroyed, therefore, stipulations in the policy as to arbitration must yield to the statute. (*Queen Ins. Co. v. Leslie*, 24 N. E. Rep. [O.], 1072; *Seyk v. Millers Nat. Ins. Co.*, 41 N.W. Rep. [Wis.], 443.) The jury brought in a verdict for a small sum, less than the amount of the policy, in each case, having evidently deducted the value of the brick and other

material left from the burned building.    Of this the com-
panies have no cause to complain.

3.  The question whether or not the building was wholly
destroyed is one of fact and it seems to have been fairly
submitted to the jury.    It is unnecessary to review the
instructions.    There is no material error in the record and
the judgment is

AFFIRMED.

THE other judges concur.